*E-Filed 10/15/10*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID THAYNE SMITH, | No. C 08-4620 RS (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, Warden, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 1994, a Los Angeles Superior Court jury convicted petitioner of second degree murder. The trial court sentenced petitioner to fifteen years-to-life, plus one year, in state prison. In 2006, the Board of Parole Hearings ("Board") found petitioner unsuitable for parole on grounds that he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Pet., Ex. A at 99.) In response to the Board's decision, petitioner sought, though was denied, relief on state collateral review. (Pet. at 4–5.)

This federal habeas petition followed.

In reaching its decision, the Board considered the facts of the commitment offense. In October 1992, petitioner and his friend Dan Miller shot and killed Drake Hanson in what the Board described as an "execution style murder," each naming the other as the actual shooter. Hanson, petitioner's employer and friend, was shot five times with his back to the shooter, and was wounded in his head, back, and upper torso. (*Id.* at 16–22, 24, 25). Hanson's wallet, keys, identification cards, and address book were taken from the body, and later found in petitioner's storage unit, as was the victim's computer equipment. (*Id.* at 21 & 38.) The three men had been committing burglaries together in the months before the shooting, and drove to a remote area of Los Angeles one night in search of a construction site to rob. (*Id.* at 22–24, 34–35.) The three allegedly got lost, and exited the vehicle for a time, during which Hanson was shot. (*Id.* at 24.) Petitioner admits that he was near the crime scene, but asserts that he had no part in the plan to kill Hanson, and that he was 75 yards from the scene urinating when the shooting occurred. (*Id.* at 24 & 30.)

The Board felt that petitioner's expressions of remorse "sounded very canned." As the presiding commissioner observed: "I didn't really get any sincerity from you whatsoever and the fact is, you knew this person. You knew him. I mean he was a friend. You testified to that." (*Id.* at 107.) The Board was also troubled by the fact that the crime looked "extremely well-planned" in that the victim was shot in a remote area in Los Angeles County. (*Id.*)

In addition to the circumstances of the commitment offense, the Board cited his institutional and parole plans as factors in its decision. Although petitioner had no prior criminal history, *id.* at 40, has committed no disciplinary infractions while in prison, *id.* at 56, and, according to 2002 psychological report, presents a low risk of future violence, *id.* at 71–72, the Board was troubled by petitioner's lack of adequate parole plans, particularly his lack of firm job offers, a great concern because petitioner had participated in the commitment offense because he needed money. Though his mother, who lives in Oklahoma and has been

too unwell to travel to California to visit her son, had offered him a place to stay after release, *id.* at 42–43, the Board and petitioner regarded such arrangement as a temporary solution, *id.* at 104–05. Petitioner's sister, who resides in California, did offer petitioner a place to live, though it appears that petitioner has not secured any job offers in the area in which she lives. (*Id.* at 47–48.) In fact, petitioner had not received any job offers in California,[1] the state where he would be paroled, but rather thought he would be able to develop job offers through the marketing of his office and cabinet mill work. (Id. at 106.) These vague plans concerned the Board a great deal:

> [P]rior to your incarceration, it appeared that you were — you know, you were taking acting classes. You weren't really employed. You got employed but into a situation, which was completely illegal. So the likelihood for that occurring again if you didn't have support on the outside is what we're concerned about.

(*Id.* at 106.) In light of all these factors, the Board concluded that petitioner posed an unreasonable threat to public safety and denied him parole. (*Id.* at 99.) As grounds for federal habeas relief, petitioner alleges that there was no evidence that petitioner poses a current risk to public safety if released on parole.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[1] Petitioner, who has experience in carpentry and once had a contractor's license, was offered a job in woodworking in Oklahoma. (*Id.* at 45, 46.)

1  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
2 court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of
3 law or if the state court decides a case differently than [the] Court has on a set of materially
4 indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under
5 the 'unreasonable application' clause, a federal habeas court may grant the writ if the state
6 court identifies the correct governing legal principle from [the] Court's decision but
7 unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]
8 federal habeas court may not issue the writ simply because that court concludes in its
9 independent judgment that the relevant state-court decision applied clearly established
10 federal law erroneously or incorrectly. Rather, that application must also be unreasonable."
11 *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask
12 whether the state court's application of clearly established federal law was "objectively
13 unreasonable." *Id.* at 409.

## DISCUSSION

15  Petitioner claims that the Board's decision violated his right to due process because it
16 was not based on "some evidence" that he currently poses an unreasonable risk to public
17 safety. Due process requires that the Board's decision to deny a California prisoner parole be
18 supported by "some evidence" of current dangerousness. *Hayward v. Marshall*, 603 F.3d
19 546 (9th Cir. 2010); *see also Pearson v. Muntz*, No. 08-55728, 2010 WL -- (9th Cir. May 24,
20 2010) (per curium). Accordingly, in reviewing federal habeas claims that a California
21 prisoner was denied parole in violation of due process, courts must "decide whether the
22 California judicial decision approving the governor's [or the parole board's] decision
23 rejecting parole was an "unreasonable application" of the California "some evidence"
24 requirement, or was "based on an unreasonable determination of the facts in light of the
25 evidence." *Hayward*, 604 F.3d at 562–63.

26  The commitment offense alone does not always provide evidence that a petitioner
27 poses a current threat to public safety. *Id.* at 562. The offense does not establish current

dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports an inference of dangerousness. *Id.* (citing *In re Lawrence*, 44 Cal. 4th 1181, 1214 (Cal. 2008).)

Here, the record shows that there was "some evidence" to support the state court's approval of the Board's parole denial. First, the circumstances surrounding the commitment offense suggest that petitioner is capable of coolly committing acts of planned violence for trivial reasons. Petitioner and Miller drove Hanson to a remote area of Los Angeles in conjunction with a plan to steal from a construction site, and shot him execution-style in the back of the head and chest. Second, the record establishes that petitioner's post-conviction history supports an inference of current dangerousness — in particular his lack of remorse for the death of his friend, which may indicate a lack of insight into his offense, and, more importantly, his rather vague parole plans. The insubstantiality of his parole plans raises a particular concern in that it was petitioner's lack of lawful employment that drove him to commit crimes. It is reasonable to infer from this record of past violence and failure to plan adequately for his future that, if released, petitioner currently poses an unreasonable risk of danger to society, or a threat to public safety. In sum, the state court's approval of the Board's decision, therefore, was not an "unreasonable application" of the California "some evidence" requirement, nor was it "based on an unreasonable determination of the facts in light of the evidence."

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: October 14, 2010

_____
RICHARD SEEBORG
United States District Judge